O’Connor, C.J.,
dissenting.
{¶ 37} This appeal involves a case in which the Bureau of Workers’ Compensation knew that claimant Dean Sziraki was fully disabled, that he was entitled to additional benefits that he was not receiving, and that he would not receive those benefits until there was a guardian over his estate.
*208 {¶ 38} And the bureau knew that no one was seeking that guardianship despite repeated discussions with Dean’s mother, Marilyn Sziraki, about the necessity of doing so. In fact, the bureau threatened to refer the case to the attorney general if Dean’s family did not seek the proper guardianship. The bureau failed to act on that threat, however.
{¶ 39} A year later, Dean died without receiving any of the additional benefits to which he was entitled.
{¶ 40} Given the context of this case, I would hold that the bureau had a clear legal duty to act. Specifically, it had a duty to refer Dean’s case to the attorney general to pursue the proper guardianship or to award benefits to the estate, even in the absence of an application. At this point, the former course is no longer necessary or appropriate, because the estate is available as a proper payee. I would further hold that the appellate court’s decision affirming the bureau’s failure to award benefits during Dean’s lifetime was arbitrary, unreasonable, and unconscionable. I therefore dissent.
Analysis
{¶ 41} There is no dispute that the bureau knew that Dean was medically eligible for an award pursuant to R.C. 4123.57(B) for the scheduled loss of use of both arms and both legs. From the date of Dean’s accident until he died, the bureau was involved in, and paid for, his medical care and nursing-home expenses. As part of this process, the bureau required periodic medical updates of Dean’s condition, through which it was informed of Dean’s near-total helplessness.
{¶ 42} The records updating his condition are replete with references to Dean’s quadriplegia, inability to communicate, and many other severe medical problems.[3] One record describes him as “essentially in a vegetative state.” Thus, the bureau knew that Dean was medically eligible under R.C. 4123.57(B) for an award for the scheduled loss of use of both arms and both legs.
{¶ 43} The bureau also knew that because of the severity of Dean’s debilitated condition, he was unable to seek benefits on his own behalf or solicit help for that purpose. And the bureau knew that he had no guardian or other representative acting for him. In fact, as early as 1997, the bureau’s notes raised questions about the need for a power of attorney for finances (even though Dean was probably not competent to confer such a power). The bureau’s notes even *209 indicate that one of its representatives planned to contact Marilyn and the nursing home where Dean was being cared for regarding the need for a power of attorney.
{¶ 44} Eight years later, in January 2005, the bureau’s notes again refer to the bureau’s inability to pay permanent-total-disability compensation because no one had a power of attorney authorizing receipt of the payments on Dean’s behalf. Those notes reflect that a representative contacted Marilyn again, but the representative reported that “the mother does not want the money. She was to have the brother be [sic, obtain] the [power of attorney] but to date no one will do so.”
{¶ 45} It was not until more than a year later, in February 2006, that the bureau finally wrote to Marilyn in an attempt to resolve the bureau’s continuing inability to pay the benefits that were already awarded because there was no guardian over Dean’s estate to receive payment. In that letter, the bureau.stated that if Marilyn failed to respond, the bureau intended to refer the matter to the attorney general’s office to file a suggestion of incompetency with the probate court to get a guardian of the estate appointed. The record does not disclose any response from Marilyn. But despite its ultimatum, the bureau took no further action to pursue a guardianship for Dean, even though the bureau clearly knew that he was entitled to additional benefits that he was not receiving, that he would never receive them unless someone acted, and that all attempts to get his family to act had failed.
{¶ 46} The majority does not dispute these facts, but nevertheless affirms the judgment of the court of appeals, emphasizing that R.C. 4123.57(B) contemplates an application even though it does not mandate one. In so doing, the majority ignores the language of R.C. 4123.57, which states that “the employee may file an application with, the bureau of workers’ compensation * * (Emphasis added.) That language makes clear that filing an application is permissive, not mandatory.
{¶ 47} The majority also ignores the General Assembly’s mandate, and our own precedent, that we must liberally construe R.C. Chapter 4123 in favor of employees. R.C. 4123.95; State ex rel. Walker v. Indus. Comm., 58 Ohio St.2d 402, 403, 390 N.E.2d 1190 (1979).
{¶ 48} Moreover, while contending that R.C. 4123.57 “requires” an application, the bureau has conceded that it has the discretion to award scheduled-loss compensation even if no application is filed. Indeed, it acknowledges that it advertised that very discretion to the public through postings on its own website, informing claimants that no application or motion is necessary and that a scheduled-loss award can be identified during claim investigation. Bureau of Workers’ Compensation, Infostation, www.ohiobwc.com/basics/infostation/ *210 InfostationContent.asp?Item=1.2.3.11 (“temporarily disabled” when access was attempted on Aug. 21, 2013).
{¶ 49} Given the bureau’s authority to act in the absence of an application, its full knowledge that Dean was too disabled to seek benefits on his own,[4] and its assertion that it would refer the case to the attorney general’s office for a suggestion of incompetency if Marilyn did not act, I would hold that the bureau had a clear legal duty to act by either exercising its discretion to confer benefits in the absence of an application or to pursue the referral to the attorney general’s office so that a proper guardian could be appointed to act on Dean’s behalf.
{¶ 50} In urging affirmance, the bureau emphasizes that it is the claimant’s responsibility to diligently pursue compensation. See State ex rel. Welsh v. Indus. Comm., 86 Ohio St.3d 178, 180, 712 N.E.2d 749 (1999). Though that is generally a true statement of law, it is of little guidance in this case.
{¶ 51} There is absolutely no suggestion in Welsh or the briefs filed in support of the parties’ positions in that case that the bureau was aware that Welsh was entitled to additional benefits but not receiving them because he was medically incapable of pursuing his claim and had no guardian to act on his behalf. And there is no suggestion in Welsh that the bureau had asserted that it would act if he or his guardian failed to do so.
{¶ 52} Other cases cited by the bureau are also inapposite. In those cases, we reaffirmed our rule not to allow exceptions to R.C. 4123.52, the two-year statute of limitations applied to Dean’s estate. See, e.g., State ex rel. Baker v. Indus. Comm., 97 Ohio St.3d 267, 2002-Ohio-6341, 779 N.E.2d 214, ¶ 7-8 (rejecting argument that the statute of limitations should not apply when claimant spent six years establishing entitlement to temporary-total-disability benefits before successfully applying for permanent-total-disability benefits); State ex rel. Justice v. Dairy Mart, Inc., 94 Ohio St.3d 34, 759 N.E.2d 1252 (2002) (rejecting arguments that the statute of limitations should not apply when the claimant’s injuries were very severe). But like Welsh, neither Baker nor Justice nor any other case decided by us has been predicated on facts and circumstances like those presented in this appeal. We do no service to the people or the law by reflexively applying broad rules of utilitarian law that work well in most cases but fail to address nuances and contexts we have not previously considered.
*211 Law Offices of Kurt M. Young, L.L.C., and Kurt M. Young, for appellant.
Michael DeWine, Attorney General, and Patsy A. Thomas, Assistant Attorney General, for appellees.
{¶ 53} In this appeal, we are presented with the fact that the bureau knew that it had awarded some benefits to a worker whose work-related quadriplegia and inability to communicate rendered him incapable of pursuing his own interests. The bureau further knew that the worker was entitled to more benefits if given the proper guardian. We also know that the bureau knew that neither the worker nor anyone acting on his behalf had filed an application for the benefits, but that it had the discretion to award those benefits even without the application. And we know that the bureau informed the worker’s mother, in writing, that it would refer the case to the attorney general if she did not act, but failed to follow through. Despite the bureau’s ability, knowledge, and opportunity to make a scheduled-loss award during Dean’s lifetime, the majority holds that the bureau had no duty to act to confer an award prior to Dean’s death. I cannot agree.
{¶ 54} As an arm of the state, the bureau had a duty to act to pursue a referral of Dean’s case to the attorney general to secure the proper guardianship, given that it knew Marilyn was not doing so and had not. done so despite ample time and opportunity. Comment, The Attorney General as Consumer Advocate: City of York v. Pennsylvania Public Utility Commission, 121 U.Pa.L.Rev. 1170, 1175 (1973) (“The doctrine of parens patriae confirms the power of the state to protect persons under a disability or incapable of managing their own affairs”).
{¶ 55} Rather than reinforcing the bureau’s dereliction of its duty by affirming this judgment, I would reverse the judgment of the court of appeals, grant a writ of mandamus, and order the commission to award the full 850 weeks of scheduled-loss benefits, not just the 104 weeks that were awarded because of the statute of limitations. I would do this not to benefit the relatives of Dean Sziraki but to ensure that the welfare of future participants in the workers’ compensation system will not be jeopardized by the system’s inaction in the face of a clear duty.
Pfeifer and O’Neill, JJ., concur in the foregoing opinion.

. In her findings of fact, a magistrate in the Tenth District Court of Appeals noted that Dean’s claim was allowed for an array of conditions, including intracerebral hemorrhage, pneumonia, respiratory failure, “coma and stupor,” multiple fractures including “cervical fracture with cord injury,” brain injury, and other injuries and conditions. 2011-Ohio-1486, 2011 WL 1137455, ¶ 14.

. In 2002, when Dean was awarded compensation for statutory permanent total disability based on the loss of use of both arms and both legs under R.C. 4123.58(C), the bureau had both ample medical evidence demonstrating the loss of use of Dean’s arms and legs and the opportunity to examine that evidence for purposes of a loss-of-use award under R.C. 4123.57(B). It did not. In its 2006 letter, the bureau even acknowledged that Dean may be entitled to other benefits not addressed in the 2002 order.